IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| DX PRINT, LLC; and LEWIS COLOR LITHOGRAPHERS, Inc., <br><br>   Plaintiffs, <br><br>   v. <br><br> THE NATIONAL CENTER FOR LIFE AND LIBERTY, INC.; and JONATHAN BAILIE, <br><br>   Defendants. | CIVIL ACTION NO.: 6:21-cv-13 |

**O R D E R**

This case is presently before the Court for a determination of whether the Court has subject matter jurisdiction, an issue that has been briefed by the parties, (docs. 11, 12), pursuant to a show cause Order issued by the Court on September 1, 2021, (doc. 10).  For the reasons set forth below, the Court finds that it lacks subject matter jurisdiction, and, accordingly, **REMANDS** the case to the State Court of Bulloch County.

**BACKGROUND**

On December 28, 2020, Plaintiffs DX Print, LLC ("DX Print") and Lewis Color Lithographers, Inc. ("Lewis Color") initiated this action against the National Center for Life and Liberty, Inc. ("NCLL") and Jonathan Bailie in the State Court of Bulloch County, Georgia. (Doc. 1-1.)  Their Complaint asserts claims for breach of contract, complaint on account, unjust enrichment, and quantum meruit. (Id. at pp. 2–10.)  According to the Complaint, after contacting DX Print about the cost of printing and mailing services, NCLL executed and delivered to DX Print an Application for a line of credit, along with a personal guarantee signed by Bailie. (Id. at

p. 3.) Thereafter, Plaintiffs provided commercial printing and mailing services to Defendants "on numerous different orders," resulting in outstanding invoices totaling $44,533.26. (Id. at p. 3.) Plaintiffs allege that Defendants have failed to make payment of the amounts due per the Application and the invoices. (Id. at pp. 3–4.) Accordingly, Plaintiffs seek $44,533.26 plus interest at a rate of $21.96 per day (which, at the time they filed the Complaint, had already accrued in the amount of $8,266.40). (Id. at pp. 4–11.)

DX Print and Lewis Color also seek attorneys' fees. (Id. at pp. 9–10.) In Count V of the Complaint, Plaintiffs assert that they are entitled to recover attorneys' fees from Defendants under two alternative theories. First, they assert a right to recover attorneys' fees pursuant to an attorneys' fees provision within the application for the line of credit. (Id. at pp. 3, 9–10; see also id. at p. 13 ("Applicant agrees to pay any collection costs incurred to collect the account balance, including . . . attorney's fees of not less than 33% of the unpaid principal and interest.").) Specifically, Plaintiffs allege that, pursuant to the attorneys' fees provision as limited by Georgia law,[1] they are "entitled to 15% of all interest and principal owing as attorneys' fees for enforcing the [a]pplication." (Id. at p. 10.) Accordingly, in the Complaint they alleged an entitlement, as of December 21, 2020, to an award of $7,919.95 in attorneys' fees.[2] Additionally in Count V, Plaintiffs allege that, "alternatively, [they] are entitled to an award of their reasonable attorney's fees and costs" pursuant to O.C.G.A. § 13-6-11, which permits a jury to award litigation expenses to a plaintiff "where the defendant has acted in bad faith, has been stubbornly litigious, or has

---

[1] Pursuant to O.C.G.A. § 13-1-11, "[i]f [a] note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness." O.C.G.A. § 13-1-11(a)(1).

[2] This number represents 15% of the sum of the principal and interest ($52,799.66) which Defendants allegedly owed as of December 21, 2020. (Doc. 1-1, p. 4.)

2

caused the plaintiff unnecessary trouble and expense." (Id. at pp. 5–6, 10.) They do not provide a specific amount of attorneys' fees to which they claim entitlement under this alternative theory.

Defendants removed the action to this Court on February 10, 2021. (Doc. 1.) To support removal, they argued that the Court possessed diversity jurisdiction under 28 U.S.C. § 1332(a). (Id. at p. 2.) To prove that there was an adequate amount in controversy, Defendants relied on "two elements of damages . . . (1) amounts allegedly owed; and (2) prevailing party attorney's fees." (Id. at p. 3.) Specifically, Defendants noted that Plaintiffs sought "$44,533.26 as the principle [sic] amount allegedly owed." (Id.) Defendants then asserted that "the total amount of attorneys' fees to be incurred will exceed the $31,000 necessary to satisfy this Court's jurisdictional threshold." (Id. at p. 3.) This claim was based on Defendants' assumption that Plaintiffs necessarily would incur enough fees to surpass the $75,000 minimum because "[a]t the time of simply drafting the Complaint, Plaintiffs alleged a sum of nearly $8,000 [in] attorneys' fees had been incurred." (See id.) It bears noting, however, that Defendants, in making this statement, apparently misread or misunderstood the allegations in Count V of Plaintiffs' Complaint. As described above, the $7,919.95 figure was a calculation of the amount of attorney's fees to which Plaintiffs claimed they were entitled, as of December 21, 2020, under the application's attorneys' fees provision (as limited by O.C.G.A § 13-1-11(a)(1)). (See doc. 1-1, p. 10.) The Complaint in no way indicated that the $7,919.95 figure reflected or in any way related to the amount of time Plaintiffs' counsel had actually spent on the case, or an amount of fees that counsel had billed, as of that date.

After removal, Defendants filed a Motion to Dismiss. (Doc. 6.) While reviewing the Motion to Dismiss, the Court observed that Defendants were relying upon future, unbilled attorneys' fees to satisfy the $75,000 amount in controversy requirement of Section 1332(a). (See

3

doc. 10, pp. 3–4.)  There is a circuit split on the issue of whether future attorneys' fees may be used to satisfy the jurisdictional threshold, and the Court of Appeals for the Eleventh Circuit has yet to weigh in.  See, e.g., Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 796 (9th Cir. 2018) ("[W]e do not share the Seventh Circuit's concern that calculating future attorneys' fees is inherently too speculative.").  The Court entered an Order noting that the best approach is typically to omit prospective attorneys' fees from the amount in controversy calculation and stating that it lacked certainty about whether it possessed subject matter jurisdiction over this case.  (Doc. 10, pp. 4–6.)  Accordingly, the Court denied Defendants' Motion to Dismiss without prejudice and directed Defendants to show cause as to why the case should not be dismissed for failure to meet the amount in controversy requirement.  (Id. at p. 10.)

On September 15, 2021, Defendants timely filed a Response to the Court's Order to show cause.  (Doc. 11.)  Plaintiffs filed a Reply on September 29, 2021.  (Doc. 12.)

## DISCUSSION

"As this case was originally filed in state court and removed to federal court by the [D]efendants, the [D]efendants bear the burden of proving that federal subject matter jurisdiction exists."  Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1314 (11th Cir. 2002).  Because Defendants removed this case based on diversity of citizenship under Section 1332(a), Defendants must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.[3]  See Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014)

---

[3]  Previously, a defendant removing a case based on diversity of citizenship was required to prove "to a legal certainty" that the plaintiff's claim exceeded Section 1332(a)'s amount in controversy threshold.  See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).  However, in 2011, Congress amended 28 U.S.C. § 1446(c)(2), effectively altering the standard of proof in cases removed based on diversity.  See Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112–63, § 103 (2011).  The amended version of Section 1446(c)(2)(A) allows the removing defendant to assert an amount in controversy in the notice of removal that differs from an amount asserted by the plaintiff in the complaint if: (1) "the initial pleading seeks . . . a money judgment"; and (2) the state where the action was originally

("[R]emoval ... is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount.") (quotations omitted) (citing 28 U.S.C. § 1446(c)(2)(B)); see also Harris v. Aghababaei, 81 F. Supp. 3d 1278, 1281 (M.D. Ala. 2015) ("[T]he court finds it must evaluate whether the Defendants have shown, by a preponderance of the evidence, that the amount in controversy in this case exceeds $75,000."). If Defendants fail to meet this burden, the Court must remand for lack of subject matter jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001); see 28 U.S.C. § 1447(c).

It is well-established that attorneys' fees may be considered when assessing the amount in controversy if they are allowed by statute or contract. Federated Mut. Ins. v. McKinnon Motors, LLC, 329 F.3d 805, 808, n.4 (11th Cir. 2003) (citing Graham v. Henegar, 640 F.2d. 732, 736 (5th Cir. 1981)). "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1265 (11th Cir. 2000). Here, because Plaintiffs specially pleaded and prayed for attorney's fees, (doc. 1-1, pp. 9–10), they may be eligible for attorneys' fees under O.C.G.A § 13-6-11. See O.C.G.A § 13-6-11. Additionally, Defendants' line of credit application states that "[NCLL] agrees to pay any collection costs incurred to collect the account balance, including . . . [a]ttorney's

---

filed "permits recovery of damages in excess of the amount demanded." See 28 U.S.C. § 1446(c)(2)(A). Section 1446(c)(2)(B) then states that "removal of the action is proper on the basis of an amount in controversy asserted [by the defendant] if the district court finds, *by the preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." See id. §1446(c)(2)(B) (emphasis added). Here, Plaintiff seeks a money judgment of more than $52,799.66 (specifically, $44,533.26 in principal plus $8,266.40 in accrued interest, plus additional interest that has continued to accrue) and also seeks attorneys' fees of more than $7,919.95 (a figure which will increase in correlation with the accruing interest). (Doc. 1-1, p. 6.) Additionally, Georgia law permits recovery of damages in excess of the amount Plaintiffs sought in their complaint. See O.C.G.A. § 9-11-54(c)(1) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."). Therefore, Section 1446(c)(2)(B) applies, and Defendants must prove that the amount in controversy (as stated in their notice of removal) exceeds $75,000 by a preponderance of the evidence—not to a "legal certainty."

fees," (doc. 1-1, p. 13), and O.C.G.A. § 13-1-11 provides that "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness . . . shall be valid and enforceable and collectable as a part of such debt" if certain conditions are met, see O.C.G.A. § 13-1-11(a).  Thus, there is no question that the amount in controversy includes the $7,919.95 in attorneys' fees (i.e., 15% of all interest and principal owing, pursuant to O.C.G.A § 13-1-11) that had accrued as of December 21, 2020, before the case was removed.[4]  (See doc 1-1, p. 6.) See Springstead v. Crawfordsville State Bank, 231 U.S. 541, 542 (1913) (including a reasonable attorneys' fee when computing the jurisdictional threshold in an action "on two promissory notes . . . [which] provid[ed] for the payment of a reasonable attorney's fee"); Oliva v. Geovera Specialty Ins., No. 19-cv-23625-BLOOM/Louis, 2019 WL 4183582, at *3 (S.D. Fla. Sept. 4, 2019) ("[T]he amount in controversy . . . includes . . . those [attorneys'] fees accrued as of the time of removal.").

However, as Defendants acknowledge, they cannot meet their burden of proving that the amount in controversy exceeds $75,000 unless the Court accounts for "both past *and future*" attorneys' fees.  (Doc. 11, p. 2 (emphasis added).)  Although the Eleventh Circuit has yet to address the issue, see Oliva, 2019 WL 4183582, at *2, a majority of district courts in this Circuit have concluded that the amount in controversy in Section 1332(a) includes only those attorneys' fees that have accrued up to the time of removal.  See Bradley v. Hartford Life & Accident Ins., No. 2:10-CV-00017-WCO, 2010 WL 11597137, at *4 (N.D. Ga. July 7, 2010) ("[M]any courts in the circuit have adopted the time of removal test, basing the decision to remand upon whether or not the attorney's fees accrued as of the time of removal were sufficient to satisfy the amount in controversy.") (discussing Kingdom Ins. Grp. v. United Healthcare Ins., No. 7:09-CV-113-HL,

---

[4] Defendants have not provided the Court with an updated calculation of this amount (which increases as the interest on the principal increases) as of February 10, 2021 (the date of removal).  Defendants apparently acknowledge, however, that this figure would not have increased enough to bring the total amount in controversy above or even appreciably closer to the jurisdictional threshold.  (Doc. 11, p. 2.)

6

2010 WL 1782275, at *6 (M.D. Ga. May 4, 2010) and Russell Corp. v. Ward, No. 3:08-CV-293-WKW, 2008 WL 2852311, at *3 (M.D. Ala. July 22, 2008)).  As this Court previously noted in its Order denying Defendants' Motion to Dismiss without prejudice, (doc. 10), the wisdom of the "time of removal" test is that it "follows naturally from the well-trodden rule that, in a removed case, jurisdiction must be determined 'at the time of removal, not later.'"  Torreyes v. Godiva Chocolatier, Inc., 424 F. Supp. 3d 1276, 1282 (S.D. Fla. 2019) (quoting Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010)); see also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) ("[J]urisdictional facts are assessed at the time of removal."); Nelson v. Whirlpool Corp., 727 F. Supp. 2d 1294, 1301 (S.D. Ala. 2010) ("Section 1447(c) generally 'prohibits courts from relying on post-removal events in examining subject matter jurisdiction.'") (quoting Poore v. American–Amicable Life Ins., 218 F.3d 1287, 1290 (11th Cir. 2000), overruled in part on other grounds by Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 641 (11th Cir. 2007)).  Moreover, it adheres to the Eleventh Circuit's recognition that, "[b]ecause removal jurisdiction raises significant federalism concerns, . . . all doubts about jurisdiction should be resolved in favor of remand to state court."  Univ. of S. Ala v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999).  In other words, by refusing to exercise diversity jurisdiction based upon "highly speculative, prospective amounts of attorney's fees," Oliva, 2019 WL 4183582, at *3, district courts avoid "depriv[ing] a state court of its right under the Constitution to resolve controversies in its own courts," Univ. of S. Ala., 168 F.3d at 411.

Nonetheless, Defendants contend that "a proper reading of the text of [Section] 1332 indicates all attorney's fees should be included" in the calculation.  (Doc. 11, p. 3.)  The crux of their argument is that, because Congress expressly excluded only "interest and costs" from the amount in controversy, it intended for everything else—including all attorneys' fees, regardless of

when they were or are incurred—to be considered. (See id.) This argument fails because it erroneously presumes that attorneys' fees do not fall within Section 1332(a)'s exclusion of interests and costs. Indeed, courts have long held that attorneys' fees are "costs" which are excluded from the amount in controversy under Section 1332(a) "except when [they] are allowed by the court in the exercise of its discretion . . . or as a matter of contractual or statutory right." 14AA Wright & Miller, Fed. Prac. & Proc. Juris. § 3712 (4th ed.); see also Federated Mut., 329 F.3d at 808 ("The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract."). And even if this were not the case, Defendants have not identified any language in Section 1332(a) which supports their contention that *future* attorneys' fees must be considered when calculating the amount in controversy.

Defendants next argue that the time of removal approach "fail[s] to take into account the purpose behind [Section] 1332," (doc. 11, p. 4), and limits access to federal court by making removal more difficult, (id. at pp. 5–6). This argument is also unpersuasive because the amount in controversy requirement—which Congress has increased five times since it was first instituted in 1789—is intended to serve as a means of limiting the number of cases that otherwise qualify (based on diversity of citizenship) for removal to federal court. See Wright & Miller, supra, § 3701 (4th ed.) Though the legislative history relating to the most recent increase from $50,000 to $75,000 in 1996 is limited, see Pub. L. No. 104-317, § 205, 110 Stat. 3847, 3850 (1996) (codified as amended at 28 U.S.C. § 1332(a)), Congress's earlier increases were expressly intended to reduce the burden on district courts caused by an influx of diversity cases. See Horton v. Liberty Mut. Ins., 367 U.S. 348, 350–51 (1961) ("[T]he purpose and effect of the 1958 amendment were to reduce congestion in the Federal District Court's [sic] partially caused by the large number of civil

cases that were being brought under the long-standing $3,000 jurisdictional rule."); see also Wright & Miller, supra, § 3701 ("Congress's intent in enacting the 1989 increase, as articulated in the legislative history, was to reduce the number of diversity of citizenship cases in the federal courts . . . ."). Furthermore, while Defendants are correct that "the removal process . . . was created by Congress to protect defendants," (doc. 11, p. 4 (quoting Pretka, 608 F.3d at 766)), that protection is tempered by Article III's limitations on federal court jurisdiction.  See Burns, 31 F.3d at 1095 ("Federal courts are courts of limited jurisdiction.  While a defendant does have a right, given by statute, to remove in certain situations, . . . removal is only permissible when plaintiff's claim could have been filed in federal court originally . . . ."). In fact, as Defendants acknowledge, the Eleventh Circuit favors a narrow interpretation of the removal statutes in order to avoid significantly expanding federal diversity jurisdiction.  (Doc. 11, p. 4).  See, e.g., Burns, 31 F.3d at 1096–97 ("Under defendant's proposed rule, anytime a plaintiff sued for less than the jurisdictional amount but there remained even a possibility that she would amend her claim or be awarded more than she pleaded, jurisdiction would exist.  This approach would unacceptably broaden removal jurisdiction.").[5]

---

[5] Defendants also assert that the time of removal test cuts against judicial economy because it incentivizes defendants to "litigat[e] a case in state court until the attorney's fees sufficiently accrue and then remov[e] the case to federal court to start anew."  (Doc. 11, p. 5.)  Specifically, they argue, "if only attorney's fees incurred up to the point of removal are considered, all a defendant must do following a remand is to wait until the attorney's fees incurred reach the necessary threshold and then file the notice of removal under 28 U.S.C. § 1446(b)(3)."  (Id. at pp. 5–6.)  Defendants' concerns are unfounded.  First, the removal statutes contain time limitations that generally prevent a defendant from simply sitting back and waiting for as long as necessary for the plaintiff's attorneys' fees to reach the "necessary threshold," as Defendants put it.  See, e.g., 28 U.S.C. § 1446(b)(3); id. § 1446(c).  Moreover, factors other than establishing removal jurisdiction (including the risk of being liable for an increasing amount of fees) disincentivize defendants from prolonging a case simply to establish removal jurisdiction.  Additionally, proving that the opposing party's attorneys' fees have accrued to some specific (and sufficient) amount is not always a simple task for a defendant, who is not typically privy to the opposing attorneys' hourly rates, fee arrangement, and/or billing for the case.  See, e.g., Calestani v. Hilton Worldwide, Inc., No. 7:16-cv-71, 2016 WL 3647692, at *3 (M.D. Ga. Jul. 1, 2016) ("Hilton has not met its burden in [sic] establishing that Calestani could recover under [Section] 13-6-11," in part, because Hilton failed to "state with certainty what Calestani's counsel's hourly rate is," or provide any "basis for [its] belief that this case will require Calestani's counsel to spend 200

Based on the foregoing, the Court applies the time of removal test and, therefore, will not consider attorneys' fees which accrued or will be incurred since the removal of the case. Here, as Defendants acknowledge, the sum of the principal amount of $44,533.26 allegedly owed in this matter and the $7,919.95 in contractual attorneys' fees that had accrued as of December 21, 2020, is well below $75,000. (Doc. 11, p. 2.) Furthermore, Defendants failed to offer evidence of the amount of attorneys' fees that Plaintiffs had accrued or would otherwise be entitled to under O.C.G.A. § 13-6-11 as of February 10, 2020 (the date of removal). In fact, beyond erroneously asserting that Plaintiffs' counsel had generated nearly $8,000 in attorneys' fees by the time the complaint was filed in state court, Defendants supplied no evidence—such as proof or an estimate of the hourly rate charged by Plaintiffs' counsel—which establishes that Plaintiffs' counsel would have incurred enough attorneys' fees to exceed the jurisdictional threshold. (Doc. 1, p. 3.) Therefore, Defendants failed to meet their burden of proving an adequate amount in controversy and the Court must remand this case.

### CONCLUSION

In light of the foregoing, the Court **DIRECTS** the Clerk of Court to **REMAND** this case to the State Court of Bulloch County, Georgia, and to **CLOSE** this case.

**SO ORDERED** this 3rd day of November, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

hours litigating."). Thus, where a defendant is relying on O.C.G.A. § 13-6-11 or some similar statutory provision—and is not relying on a contractual attorneys' fee provision that sets a method for calculating attorneys' fees—the defendant will not likely be able to prolong a case and then declare on a specific date that the plaintiff's attorneys' fees have accrued to a specific amount making the case now removable.